IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL LUCKE,

    Plaintiff,

v.

PPG INDUSTRIES, INC.,

    Defendant.

13cv0966
**ELECTRONICALLY FILED**

Memorandum Order re: Motion for Conditional Certification and Court-Facilitated Notice
(doc. no. 28)

## I. Introduction

Plaintiff, Mike Lucke, filed this lawsuit, asserting a cause of action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. Lucke now seeks conditional certification of this action as a collective, opt-in action under the FLSA, and he files a corresponding motion for court-facilitated notice to putative opt-in plaintiffs (doc. no. 28). Defendant opposes Plaintiff's motion for conditional certification primarily on the basis that Plaintiff has allegedly failed to meet his burden to prove that others "actually desire" to join the lawsuit. However, under the law as construed by the District Courts of this Circuit, and the corresponding lenient standard of review that this Court must employ, the Court will grant Plaintiff's motion for conditional certification without prejudice for Defendant to file a motion to de-certify the collective action at the appropriate time following notice and discovery.

## II. Factual Background

PPG Industries, Inc. ("PPG") is a global supplier of paints, coating, optical products, specialty materials, chemicals, glass and fiberglass. PPG sells paint and stain products and sells them to Menards stores in 14 states, mainly in the mid-west. Menards, in turn, sells those products to its customers at approximately 280 home improvement stores. PPG employs a team of Territory Managers, roughly 26 in all, to serve its Menards business. The primary responsibility of PPG's Territory Managers is to promote sales of PPG's paints and stain products by Menards to its customers. To that end, the primarily function of the Territory Manager is to make sure that PPG paints and stains are properly stocked, priced and displayed within the shelf space PPG has negotiated at the Menards stores.

Prior to January 1, 2012, Territory Managers were classified as exempt under the FLSA. On January 1, 2012, PPG reclassified all the Territory Managers as non-exempt, and after the reclassification, PPG implemented a mechanism to track the hours that the Territory Managers worked outside the Menards' store, doing administrative activities, driving between stores, and other time spent that was not captured by the Menards sign-in/sign-out system.

In support of his motion for conditional certification as an opt-in, Lucke has submitted an affidavit describing the nature of his job duties as a Territory Manager, including 19 different responsibilities. See Affidavit of Plaintiff Lucke (¶ 10). As directed by PPG management, all Territory Managers were required to answer questions from Menard customers, replenish and remove rebate materials, re-label Pittsburgh products, correct erroneous Menards inventory counts for Pittsburgh products, build displays, cross-merchandize Pittsburgh products, and hold in-store demonstrations. According to Plaintiff, all Territory Managers had essentially identical job duties. Also, according to Plaintiff, the Territory Managers were required to complete

certain ministerial tasks from their home computers, including routine reports to their supervisors, upper-level managers and/or executives for the Menards Pittsburgh teams, and exchanging emails, texts and phone calls with upper-level managers. Plaintiff posits that Territory Managers also traveled to and attended regional and national and sale meetings and other trainings on Pittsburgh products. And, although they were titled as "Managers," according to Plaintiff, they did not perform managerial duties, nor did any other PPG employee report to them and they were without authority to hire, fire or set salaries for other employees. Plaintiff avers that PPG management set a policy that the Menards Team was required to spend four hours inside each Menards stores and that they visit two stores per business day.

According to Lucke, prior to January 1, 2012, no system existed for tracking time spent by Territory Managers in performing the ministerial tasks on their home computers. Nor did any system exist for tracking time spent driving to, from, or between stores. Furthermore, some or all of this drive time was spent *simultaneously* performing other job-related tasks such as engaging in business communications via cell phone and/or email, or moving supplies and materials to and between Menards stores. Plaintiff was paid an annual salary of $32,000.00, which was within the range of roughly $28,000.00 to $34,000.00 paid to Territory Managers.

Plaintiff Lucke attested that a number of Territory Managers including himself, consistently complained that Territory Managers were really working many more than eight hours per day. Luck also stated that his drive times between his first or last store and his home were as many as 4 or 5 hours. Accordingly to Plaintiff, Territory Managers were in reality working a 10-12 hour days, but being paid for 8 hours.

According to the affidavit of Plaintiff, the Territory Managers (approximately 26) in this proposed collective action have been willfully misclassified as exempt from the FLSA's

3

overtime requirements, and they were uniformly denied proper straight overtime and overtime compensation for all hours worked in excess of forty per week.

**III. Discussion**

    **A. Motion for Conditional Certification**

The FLSA states that employers who require their employees to work more than forty hours per week must pay them for that excess time at a rate not less than one and one-half times the regular rate at which they are employed. 29 U.S.C. § 207(a)(1). An employee who is not paid for this excess time may bring suit under the FLSA. 29 U .S.C. § 216(b). Where, as here, the employer is alleged to have violated this provision, an employee may pursue an action in a representative capacity for "other employees similarly situated," 29 U.S.C. § 216(b). Unlike a class action pursuant to Rule 23, only those employees who voluntarily opt-in to the litigation become class members.

While the FLSA does not define the term "similarly situated," the District Courts in this Circuit have adopted a two part test to determine whether potential class members are "similarly situated." Unfortunately, there is a lack of uniformity with regard to how the District Courts within the Third Circuit apply the two stage test, because there is no agreement on the appropriate level of proof for a stage one determination on whether potential class members are similarly situated. Some Courts have conditionally certified based upon a "mere allegation that the putative class members are unified by a single policy of the defendant employer," while others Courts, including the undersigned, have adopted an approach that requires a "modest factual nexus between their situation and that of the proposed class members." See *Abercrombie v. Pressley Ridge*, 2:09-cv-468 (doc. no. 68), citing *Kuznyetsov. V. West Penn Allegheny Health System*, No. 09-cv-379, 2009 WL 1515175 (W.D. Pa. June 1, 2009).

As this Court previously stated in *Abercrombie*, quoting *Kurznyetsov,*

> During the initial notice stage, the court determines whether a class should be conditionally certified for the purpose of notice to potential opt-in plaintiffs and for pretrial discovery regarding their individual claims. In so doing, the court preliminarily determines whether the proposed class consists of similarly situated employees. Court generally examine the pleadings and affidavits of the parties to decide whether the proposed class members are similarly situated employees and utilize a "fairly lenient" standard in rendering such a determination. If the plaintiff meets the requisite showing, the class is conditionally certified for the purpose of notice and discovery. Once the class is conditionally certified, notice is given to the potential plaintiffs so that they may elect whether to opt-in to the action.
>
> In the second stage of class certification, after the court is more fully informed through discovery, the defendant may move to decertify the class on the basis that the "similarly situated" standard has not been met and the court makes its final certification decision.

2006 WL 1515175 (W.D. Pa. June 1, 2009).

While conditional certification is not automatic under this "fairly lenient" standard, it will be granted if a plaintiff "demonstrate[s] some evidence, 'beyond mere speculation,' that [the defendant's] policy affected other employees." *Pressley Ridge* citing *Bishop v. AT&T Corp.*, 256 F.R.D. 503, 507 (W.D. Pa. 2008), quoting *Parker v. NutriSystem. Inc.* No. 08-1508, 2008 WL 4399023 at *2 (E.D. Pa. September 26, 2008).

Defendant argues that in determining whether there are employees who are "similarly situated," the Court must examine whether there are other employees *who actually desire* to join the litigation,[1] however, there is no case law within this Circuit that puts such a fine point on this alleged requirement.

---

[1] The parties both cite to *Andrako v. U.S. Steel Corp.*, 2009 WL 2855662 (W.D. Pa. 2009), and Defendant argues that the Court should look to whether there are other employees who actually wish or desire to opt-in to the action as a factor in determining whether the Court should conditionally certify a collective action. This Court's review of the *Andrako* case does not reveal any such definitive statement. Incidentally, the Court notes that the Court conditionally certified the collective action in that case.

Defendant cites *Dybach v. Floria Dep't of Corr.,* 942 F.2d 1562, 1567-68 (11th Cir. 1991) where the United States Court of Appeals for the Eleventh Circuit stated that "that the district court should satisfy itself [that there are] other employees . . . who desire to 'opt-in' and who are 'similarly situated.'" All of the cases Defendant cites in support of its proposition that there must be "actual desire" to opt-in, emanate from the Eleventh Circuit (almost all cases are out of Florida and follow the *Dybach* precedent). Critically, these cases do not constitute binding precedent here, and are distinguishable on their facts.

Unlike here, in many of those cases, there was evidence of affirmative disinterest in the lawsuit by other employees. Here, there is no such evidence, only that Plaintiff (who no longer works for PPG) has been unable to contact any of the potential opt-in plaintiffs, because Defendant has been unwilling to give Plaintiff a list of potential opt-ins. The Court will decline to focus its inquiry on whether Plaintiff has failed to identify specific employees who might join the collective action, because that is not the proper area of review within this Circuit. Rather, the Court must look to the Plaintiff's allegations (affidavit and pleadings) to determine whether Defendant's policies affected other similarly situated employees.

Here, although there are no other named Plaintiffs at this time,[2] Plaintiff's affidavit sets forth sufficient facts to show that there are similarly situated employees with regard to job requirements, job titles, hours of work and pay structures. Importantly, according to Plaintiff, they share very similar job duties developed by the same Management Team, and implemented by a single training department. Although PPG disputes the core job responsibilities of Territory Managers, it does not dispute that all the Territory Managers share the same job duties under the

---

[2] Recently, in *Goldstein v. Children's Hospital of Phila*, 2013 WL 664174 (E.D. Pa. 2013), the United States District Court for the Eastern District of Pennsylvania certified the class without requiring the single named plaintiff to show other specific named employees who were willing to opt-in.

6

same management. Plaintiff alleges that he and other Territory Managers consistently complained to the same management about having to perform the same administrative functions during commutes between and among the Menards stores.

To reiterate, at the conditional certification stage, Plaintiff's burden has been described as a lenient one, and it is important to note that it is less stringent than that for joinder under Rule 20(a) or for separate trials under 42(b)." *Vargas v. General Nutrition Ctrs. Inc,* 2012 WL 5336166, (W.D. Pa. 2012).

Recently, esteemed colleague United States Senior Judge Terrence McVerry also decided a conditional certification ruling on an FLSA action in the *Vargas* case. His analysis of the proper standard of review, and application thereon bears repeating:

> During the initial phase, "the court makes a preliminary determination whether the employees enumerated in the complaint can be provisionally categorized as similarly situated to the named plaintiff." *Symczyk*, 656 F.3d at 192. At the first step of the inquiry, "the plaintiff ... [must] make a modest factual showing that the proposed recipients of opt-in notices are similarly situated." Id. (internal quotation marks omitted). To make that lenient factual showing, the "plaintiff must produce some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees. *Id*. at 194 (citing *Smith v. Sovereign Bancorp, Inc.*, No. 03–2420, 2003 WL 22701017, at *3 (E.D.Pa. Nov.13, 2003)); see *Scott v. Bimbo Bakeries, USA, Inc.*, CIV.A. 10–3154, 2012 WL 645905 (E.D.Pa. Feb.29, 2012) ("[A]t this preliminary stage of the case, these differences among proposed class members and the potential impact of FLSA exemptions do not undermine Plaintiff['s] modest factual showing."); see also *Burkhart–Deal v. Citifinancial, Inc.*, 07–1747, 2010 WL 457127 (W.D.Pa. Feb.4, 2010) ("[A] defendant's claim or defense that individualized circumstances of employees render the matter unsuitable for collective treatment may be more appropriately reviewed during step two of the certification process."). "[I]f the plaintiff carries her burden at this threshold stage, the court will 'conditionally certify' the collective action for the purposes of notice and pretrial discovery." *Id*. at 192.
>
> ***After discovery, and with the benefit of a much thicker record than it had at the notice stage, a court following this approach then makes a conclusive determination as to whether each plaintiff who has opted in to the collective***

> *action is in fact similarly situated to the named plaintiff." Id. at 193 (internal quotation marks omitted). If the plaintiff carries his or her heavier burden during the second phase "the case may proceed to trial as a collective action." Id.*

(Emphasis added).

### B. Motion for Court-Facilitated Opt in Notice

District Courts have discretion in the implementation of notice to putative opt-in plaintiffs and it is the Court's "managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Hoffman–La Roche Inc. v. Sperling*, 493 U.S. 165, 170–71, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989); see *Harris v. Healthcare Services Group, Inc.*, CIV.A. 06–2903, 2007 WL 2221411, at *4 (E.D. Pa. July 31, 2007) (citations omitted). The United States Supreme Court "has admonished that district courts 'must be scrupulous to respect judicial neutrality' " *Fisher*, 2007 WL 2221411, at *4 (quoting *Hoffmann–La Roche*, 493 U.S. at 174). To that end, the Supreme Court further cautioned that district courts "must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffmann–La Roche*, 493 U.S. at 174.

However, as for Plaintiff's Motion for Court-Facilitated Notice, Defendant seeks a meet and confer with respect to discovery, notice and/or related procedures. The Court will so order the parties to meet and confer in person and to submit their agreed upon-protocol for the Court to approve. The parties shall submit a joint status report thereon, on or before December 23, 2013, setting forth a protocol for production of contact information, the terms of an accurate notice and the logistics for providing notice and any joint proposed Order thereon. If the parties are unable to agree, dueling proposed notices and motions/requests shall be filed by December 23, 2013, together with proposed Orders.

For these reasons, Plaintiff's Motion for Conditional Certification (doc. no. 28) is GRANTED; and Plaintiff's Motion for Court-Facilitated Notice (doc. no. 28) is DENIED AS MOOT and without prejudice.

**SO ORDERED** this 16th day of December, 2013.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All Registered ECF Counsel and Parties